(Slip Opinion) OCTOBER TERM, 2009 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## NEW PROCESS STEEL, L. P. *v.* NATIONAL LABOR RELATIONS BOARD

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

No. 08–1457. Argued March 23, 2010—Decided June 17, 2010

The Taft-Hartley Act increased the size of the National Labor Relations Board (Board) from three members to five, see 29 U. S. C. §153(a), and amended §3(b) of the National Labor Relations Act to increase the Board's quorum requirement from two members to three and to allow the Board to delegate its authority to groups of at least three members, see §153(b). In December 2007, the Board—finding itself with only four members and expecting two more vacancies— delegated, *inter alia,* its powers to a group of three members. On December 31, one group member's appointment expired, but the others proceeded to issue Board decisions for the next 27 months as a two-member quorum of a three-member group. Two of those decisions sustained unfair labor practice complaints against petitioner, which sought review, challenging the two-member Board's authority to issue orders. The Seventh Circuit ruled for the Government, concluding that the two members constituted a valid quorum of a three-member group to which the Board had legitimately delegated its powers.

*Held:* Section 3(b) requires that a delegee group maintain a membership of three in order to exercise the delegated authority of the Board. Pp. 4–14.

(a) The first sentence of §3(b), the so-called delegation clause, authorizes the Board to delegate its powers only to a "group of three or more members." This clause is best read to require that the delegee group *maintain* a membership of three in order for the delegation to remain valid. First, that is the only way to harmonize and give meaningful effect to all of §3(b)'s provisions: (1) the delegation clause; (2) the vacancy clause, which provides that "[a] vacancy in the Board

shall not impair the right of the remaining members to exercise all of the powers of the Board"; (3) the Board quorum requirement, which mandates that "three members of the Board shall, at all times, constitute a quorum of the Board"; and (4) the group quorum provision, which provides that "two members shall constitute a quorum" of any delegee group. This reading is consonant with the Board quorum requirement of three participating members "at all times," and it gives material effect to the delegation clause's three-member rule. It also permits the vacancy clause to operate to provide that vacancies do not impair the Board's ability to take action, so long as the quorum is satisfied. And it does not render inoperative the group quorum provision, which continues to authorize a properly constituted three-member delegee group to issue a decision with only two members participating when one is disqualified from a case. The Government's contrary reading allows two members to act as the Board *ad infinitum*, dramatically undercutting the Board quorum requirement's significance by allowing its permanent circumvention. It also diminishes the delegation clause's three-member requirement by permitting a *de facto* two-member delegation. By allowing the Board to include a third member in the group for only one minute before her term expires, this approach also gives no meaningful effect to the command implicit in both the delegation clause and the Board quorum requirement that the Board's full power be vested in no fewer than three members. Second, had Congress intended to authorize two members to act on an ongoing basis, it could have used straightforward language. The Court's interpretation is consistent with the Board's longstanding practice of reconstituting a delegee group when one group member's term expired. Pp. 4–9.

(b) The Government's several arguments against the Court's interpretation—that the group quorum requirement and vacancy clause together permit two members of a three-member group to constitute a quorum even when there is no third member; that the vacancy clause establishes that a vacancy in the *group* has no effect; and that reading the statute to authorize the Board to act with only two members advances the congressional objective of Board efficiency—are unconvincing. Pp. 9–14.

564 F. 3d 840, reversed and remanded.

STEVENS, J., delivered the opinion of the Court, in which ROBERTS, C. J., and SCALIA, THOMAS, and ALITO, JJ., joined. KENNEDY, J., filed a dissenting opinion, in which GINSBURG, BREYER, and SOTOMAYOR, JJ., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 08–1457

NEW PROCESS STEEL, L. P., PETITIONER *v.* NATIONAL LABOR RELATIONS BOARD

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

[June 17, 2010]

JUSTICE STEVENS delivered the opinion of the Court.

The Taft-Hartley Act, enacted in 1947, increased the size of the National Labor Relations Board (Board) from three members to five. See 29 U. S. C. §153(a). Concurrent with that change, the Taft-Hartley Act amended §3(b) of the National Labor Relations Act (NLRA) to increase the quorum requirement for the Board from two members to three, and to allow the Board to delegate its authority to groups of at least three members. See §153(b). The question in this case is whether, following a delegation of the Board's powers to a three-member group, two members may continue to exercise that delegated authority once the group's (and the Board's) membership falls to two. We hold that two remaining Board members cannot exercise such authority.

## I

As 2007 came to a close, the Board found itself with four members and one vacancy. It anticipated two more vacancies at the end of the year, when the recess appointments of Members Kirsanow and Walsh were set to expire, which would leave the Board with only two members—too few to

meet the Board's quorum requirement, §153(b). The four sitting members decided to take action in an effort to preserve the Board's authority to function. On December 20, 2007, the Board made two delegations of its authority, effective as of midnight December 28, 2007. First, the Board delegated to the general counsel continuing authority to initiate and conduct litigation that would normally require case-by-case approval of the Board. See Minute of Board Action (Dec. 20, 2007), App. to Brief for Petitioner 4a–5a (hereinafter Board Minutes). Second, the Board delegated "to Members Liebman, Schaumber and Kirsanow, as a three-member group, all of the Board's powers, in anticipation of the adjournment of the 1st Session of the 110th Congress." *Id.*, at 5a. The Board expressed the opinion that its action would permit the remaining two members to exercise the powers of the Board "after [the] departure of Members Kirsanow and Walsh, because the remaining Members will constitute a quorum of the three-member group." *Ibid.*

The Board's minutes explain that it relied on "the statutory language" of §3(b), as well as an opinion issued by the Office of Legal Counsel (OLC), for the proposition that the Board may use this delegation procedure to "issue decisions during periods when three or more of the five seats on the Board are vacant." *Id.*, at 6a. The OLC had concluded in 2003 that "if the Board delegated all of its powers to a group of three members, that group could continue to issue decisions and orders as long as a quorum of two members remained." Dept. of Justice, OLC, Quorum Requirements, App. to Brief for Respondent 3a. In seeking the OLC's advice, the Board agreed to accept the OLC's answer regarding its ability to operate with only two members, *id.*, at 1a, n. 1, and the Board in its minutes therefore "acknowledged that it is bound" by the OLC opinion. Board Minutes 6a. The Board noted, however, that it was not bound to make this delegation; rather, it

had "decided to exercise its discretion" to do so. *Ibid.*

On December 28, 2007, the Board's delegation to the three-member group of Members Liebman, Schaumber, and Kirsanow became effective. On December 31, 2007, Member Kirsanow's recess appointment expired. Thus, starting on January 1, 2008, Members Liebman and Schaumber became the only members of the Board. They proceeded to issue decisions for the Board as a two-member quorum of a three-member group. The delegation automatically terminated on March 27, 2010, when the President made two recess appointments to the Board, because the terms of the delegation specified that it would be revoked when the Board's membership returned to at least three members, *id.*, at 7a.

During the 27-month period in which the Board had only two members, it decided almost 600 cases. See Letter from Elena Kagan, Solicitor General, to William K. Suter, Clerk of Court (Apr. 26, 2010). One of those cases involved petitioner New Process Steel. In September 2008, the two-member Board issued decisions sustaining two unfair labor practice complaints against petitioner. See *New Process Steel, LP*, 353 N. L. R. B. No. 25 (2008); *New Process Steel, LP*, 353 N. L. R. B. No. 13 (2008). Petitioner sought review of both orders in the Court of Appeals for the Seventh Circuit, and challenged the authority of the two-member Board to issue the orders.

The court ruled in favor of the Government. After a review of the text and legislative history of §3(b) and the sequence of events surrounding the delegation of authority in December 2007, the court concluded that the then-sitting two members constituted a valid quorum of a three-member group to which the Board had legitimately delegated all its powers. 564 F. 3d 840, 845–847 (CA7 2009). On the same day that the Seventh Circuit issued its decision in this case, the Court of Appeals for the District of Columbia announced a decision coming to the

opposite conclusion. *Laurel Baye Healthcare of Lake Lanier, Inc.* v. *NLRB,* 564 F. 3d 469 (2009). We granted certiorari to resolve the conflict.[1] 558 U. S. ___ (2009).

## II

The Board's quorum requirements and delegation procedure are set forth in §3(b) of the NLRA, 49 Stat. 451, as amended by 61 Stat. 139, which provides:

> "The Board is authorized to delegate to any group of three or more members any or all of the powers which it may itself exercise. . . . A vacancy in the Board shall not impair the right of the remaining members to exercise all of the powers of the Board, and three members of the Board shall, at all times, constitute a quorum of the Board, except that two members shall constitute a quorum of any group designated pursuant to the first sentence hereof." 29 U. S. C. §153(b).

It is undisputed that the first sentence of this provision authorized the Board to delegate its powers to the three-member group effective on December 28, 2007, and the last sentence authorized two members of that group to act as a quorum of the group during the next three days if, for example, the third member had to recuse himself from a particular matter. The question we face is whether those two members could continue to act for the Board as a quorum of the delegee group after December 31, 2007, when the Board's membership fell to two and the designated three-member group of "Members Liebman, Schaumber, and Kirsanow" ceased to exist due to the

---

[1] Several other Courts of Appeals reached the same conclusion as the Seventh Circuit, although not always following the same reasoning. See *Northeastern Land Servs., Ltd.* v. *NLRB*, 560 F. 3d 36, 41 (CA1 2009); *Snell Island SNF LLC* v. *NLRB*, 568 F. 3d 410, 424 (CA2 2009); *Narricot Industries, L. P.* v. *NLRB*, 587 F. 3d 654, 660 (CA4 2009); *Teamsters Local Union No. 523* v. *NLRB*, 590 F. 3d 849, 852 (CA10 2009).

expiration of Member Kirsanow's term. Construing §3(b) as a whole and in light of the Board's longstanding practice, we are persuaded that they could not.

The first sentence of §3(b), which we will call the delegation clause, provides that the Board may delegate its powers only to a "group of three or more members." 61 Stat. 139. There are two different ways to interpret that language. One interpretation, put forward by the Government, would read the clause to require only that a delegee group contain three members at the precise time the Board delegates its powers, and to have no continuing relevance after the moment of the initial delegation. Under that reading, two members alone may exercise the full power of the Board so long as they were part of a delegee group that, at the time of its creation, included three members. The other interpretation, by contrast, would read the clause as requiring that the delegee group *maintain* a membership of three in order for the delegation to remain valid. Three main reasons support the latter reading.

First, and most fundamentally, reading the delegation clause to require that the Board's delegated power be vested continuously in a group of three members is the only way to harmonize and give meaningful effect to all of the provisions in §3(b). See *Duncan* v. *Walker*, 533 U. S. 167, 174 (2001) (declining to adopt a "construction of the statute, [that] would render [a term] insignificant"); *Market Co.* v. *Hoffman*, 101 U. S. 112, 115–116 (1879) ("[A] statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be . . . insignificant" (internal quotation marks omitted)). Those provisions are: (1) the delegation clause; (2) the vacancy clause, which provides that "[a] vacancy in the Board shall not impair the right of the remaining members to exercise all of the powers of the Board"; (3) the Board quorum requirement, which mandates that "three members of the

Board shall, at all times, constitute a quorum of the Board"; and (4) the group quorum provision, which provides that "two members shall constitute a quorum" of any delegee group.  See §153(b).

Interpreting the statute to require the Board's powers to be vested at all times in a group of at least three members is consonant with the Board quorum requirement, which requires three participating members "at all times" for the Board to act.  The interpretation likewise gives material effect to the three-member requirement in the delegation clause.  The vacancy clause still operates to provide that vacancies do not impair the ability of the Board to take action, so long as the quorum is satisfied.  And the interpretation does not render inoperative the group quorum provision, which still operates to authorize a three-member delegee group to issue a decision with only two members participating, so long as the delegee group was properly constituted.  Reading §3(b) in this manner, the statute's various pieces hang together—a critical clue that this reading is a sound one.

The contrary reading, on the other hand, allows two members to act as the Board *ad infinitum*, which dramatically undercuts the significance of the Board quorum requirement by allowing its permanent circumvention.  That reading also makes the three-member requirement in the delegation clause of vanishing significance, because it allows a *de facto* delegation to a two-member group, as happened in this case.  Under the Government's approach, it would satisfy the statute for the Board to include a third member in the group for only one minute before her term expires; the approach gives no meaningful effect to the command implicit in both the delegation clause and in the Board quorum requirement that the Board's full power be vested in no fewer than three members.  Hence, while the Government's reading of the delegation clause is textually permissible in a narrow sense, it is structurally implausi-

ble, as it would render two of §3(b)'s provisions function-
ally void.

Second, and relatedly, if Congress had intended to
authorize two members alone to act for the Board on an
ongoing basis, it could have said so in straightforward
language. Congress instead imposed the requirement that
the Board delegate authority to no fewer than three mem-
bers, and that it have three participating members to
constitute a quorum. Those provisions are at best an
unlikely way of conveying congressional approval of a two-
member Board. Indeed, had Congress wanted to provide
for two members alone to act as the Board, it could have
maintained the NLRA's original two-member Board quo-
rum provision, see 29 U. S. C. §153(b) (1946 ed.), or pro-
vided for a delegation of the Board's authority to groups of
two. The Rube Goldberg-style delegation mechanism
employed by the Board in 2007—delegating to a group of
three, allowing a term to expire, and then continuing with
a two-member quorum of a phantom delegee group—is
surely a bizarre way for the Board to achieve the authority
to decide cases with only two members. To conclude that
Congress intended to authorize such a procedure to con-
travene the three-member Board quorum, we would need
some evidence of that intent.

The Government has not adduced any convincing evi-
dence on this front, and to the contrary, our interpretation
is consistent with the longstanding practice of the Board.
This is the third factor driving our decision. Although the
Board has throughout its history allowed two members of
a three-member group to issue decisions when one mem-
ber of a group was disqualified from a case, see Brief for
Respondent 20; Board Minutes 6a, the Board has not
(until recently) allowed two members to act as a quorum of
a defunct three-member group.[2] Instead, the Board con-

————————

[2] When one member of a group is disqualified, only two members

cedes that its practice was to reconstitute a delegee group when one group member's term expired. Brief for Respondent 39, n. 27.[3] That our interpretation of the delegation provision is consistent with the Board's longstanding practice is persuasive evidence that it is the correct one, notwithstanding the Board's more recent view. See *Bowen* v. *Georgetown Univ. Hospital*, 488 U. S. 204, 214 (1988).

In sum, a straightforward understanding of the text, which requires that no fewer than three members be vested with the Board's full authority, coupled with the Board's longstanding practice, points us toward an interpretation of the delegation clause that requires a delegee group to maintain a membership of three.

## III

Against these points, the Government makes several arguments that we find unconvincing. It first argues that §3(b) authorizes the Board's action by its plain terms, notwithstanding the somewhat fictional nature of the delegation to a three-member group with the expectation that within days it would become a two-member group. In

---

actually participate in the decision. That circumstance thus also presents the problem of the possible inferiority of two-member decisionmaking. That the Board found it necessary to reconstitute groups only when there was a vacancy, and not when there was a disqualification, suggests that its practice was driven by more than its belief in the "superiority of three-member groups," *post*, at 10 (KENNEDY, J., dissenting).

[3] It also has not been the Board's practice to issue decisions when the Board's membership has fallen to two. For about a 2-month period in 1993–1994, and a 1-month period in 2001–2002, the Board had only two members and did not issue decisions. Brief for Respondent 5, n. 4. In 2005, the Board did delegate its authority to a three-member group, of which two members issued a few orders as a quorum during a 3-day period in which the Board's (and the group's) membership fell below three. *Ibid.* But the two-member Board at issue in this case, extending over two years, is unprecedented in the history of the post-Taft-Hartley Board.

particular, the Government contends the group quorum requirement and the vacancy clause together make clear that when the Board has delegated its power to a three-member group, "any two members of that group constitute a quorum that may continue to exercise the delegated powers, regardless whether the third group member . . . continues to sit on the Board" and regardless "whether a quorum remains in the full Board." Brief for Respondent 17; see also *id.*, at 20–23.

Although the group quorum provision clearly authorizes two members to act as a quorum of a "group designated pursuant to the first sentence"—*i.e.*, a group of at least three members—it does not, by its plain terms, authorize two members to constitute a valid delegee group. A quorum is the number of members of a larger body that must participate for the valid transaction of business. See Black's Law Dictionary 1370 (9th ed. 2009) (defining "quorum" as the "minimum number of members . . . who must be present for a deliberative assembly to legally transact business"); 13 Oxford English Dictionary 51 (2d ed. 1989) ("A fixed number of members of any body . . . whose presence is necessary for the proper or valid transaction of business"); Webster's New International Dictionary 2046 (2d ed. 1954) ("Such a number of the officers or members of any body as is, when duly assembled, legally competent to transact business"). But the fact that there are sufficient members participating to constitute a quorum does not necessarily establish that the larger body is properly constituted or can validly exercise authority.[4] In

————————

[4] Nor does failure to meet a quorum requirement necessarily establish that an entity's power is suspended so that it can be exercised by no delegee. The requisite membership of an organization, and the number of members who must participate for it to take an action, are two separate (albeit related) characteristics. Thus, although we reach the same result, we do not adopt the District of Columbia Circuit's equation of a quorum requirement with a membership requirement that must be

other words, that only two members must participate to transact business in the name of the group, does not establish that the group itself can exercise the Board's authority when the group's membership falls below three.

The Government nonetheless contends that quorum rules "ordinarily" define the number of members that is both necessary and sufficient for an entity to take an action. Brief for Respondent 20. Therefore, because of the quorum provision, if "at least two members of a delegee group actually participate in a decision . . . that should be the end of the matter," regardless of vacancies in the group or on the Board. *Ibid.* But even if quorum provisions ordinarily provide the rule for dealing with vacancies—*i.e.*, even if they ordinarily make irrelevant any vacancies in the remainder of the larger body—the quorum provisions in §3(b) do no such thing. Rather, there is a separate clause addressing vacancies. The vacancy clause, recall, provides that "[a] vacancy in the Board shall not impair the right of the remaining members to exercise all of the powers of the Board." §153(b) (2006 ed.). We thus understand the quorum provisions merely to define the number of members who must participate in a deci-

_____

satisfied or else the power of any entity to which the Board has delegated authority is suspended. See *Laurel Baye Healthcare of Lake Lanier, Inc.* v. *NLRB*, 564 F. 3d 469, 475 (2009) ("[T]he Board quorum provision establishes that the power of the Board to act exists [only] when the Board consists of three members. The delegee group's delegated power to act . . . ceases when the Board's membership dips below the Board quorum of three members" (citation omitted)). The Board may not, of course, itself take any action absent sufficient membership to muster a quorum (three), and in that sense a quorum requirement establishes a minimum membership level. Our conclusion that the delegee group ceases to exist once there are no longer three Board members to constitute the group does not cast doubt on the prior delegations of authority to nongroup members, such as the regional directors or the general counsel. The latter implicates a separate question that our decision does not address.

sion, and look to the vacancy clause to determine whether vacancies in excess of that number have any effect on an entity's authority to act.

The Government argues that the vacancy clause establishes that a vacancy in the *group* has no effect. But the clause speaks to the effect of a vacancy in the *Board* on the authority to exercise the powers of the *Board;* it does not provide a delegee group authority to act when there is a vacancy in the group. It is true that any vacancy in the group is necessarily also a vacancy in the Board (although the converse is not true), and that a group exercises the (delegated) "powers of the Board." But §3(b) explicitly distinguishes between a group and the Board throughout, and in light of that distinction we do not think "Board" should be read to include "group" when doing so would negate for all practical purposes the command that a delegation must be made to a group of at least three members.

Some courts have nonetheless interpreted the quorum and vacancy provisions of §3(b) by analogizing to an appellate panel, which may decide a case even though only two of the three initially assigned judges remain on the panel. See *Photo-Sonics, Inc.* v. *NLRB*, 678 F. 2d 121, 122–123 (CA9 1982). The governing statute provides that a case may be decided "by separate panels, each consisting of three judges," 28 U. S. C. §46(b), but that a "majority of the number of judges authorized to constitute a court or panel thereof . . . shall constitute a quorum," §46(d). We have interpreted that statute to "requir[e] the inclusion of at least three judges in the first instance," but to allow a two-judge "quorum to proceed to judgment when one member of the panel dies or is disqualified." *Nguyen* v. *United States*, 539 U. S. 69, 82 (2003). But §46, which addresses the assignment of particular cases to panels, is a world apart from this statute, which authorizes the standing delegation of all the Board's powers to a small

group.[5]  Given the difference between a panel constituted
to decide particular cases and the creation of a standing
panel plenipotentiary, which will decide many cases aris-
ing long after the third member departs, there is no basis
for reading the statutes similarly.  Moreover, our reading
of the court of appeals quorum provision was informed by
the longstanding practice of allowing two judges from the
initial panel to proceed to judgment in the case of a va-
cancy, see *ibid.*, and as we have already explained, the
Board's practice has been precisely the opposite.

Finally, we are not persuaded by the Government's
argument that we should read the statute to authorize the
Board to act with only two members in order to advance
the congressional objective of Board efficiency.  Brief for
Respondent 26.  In the Government's view, Congress'
establishment of the two-member quorum for a delegee
group reflected its comfort with pre-Taft-Hartley practice,
when the then-three-member Board regularly issued
decisions with only two members.  *Id.*, at 24.  But it is
unsurprising that two members regularly issued Board
decisions prior to Taft-Hartley, because the statute then
provided for a Board quorum of two.  See 29 U. S. C.
§153(b) (1946 ed.).  Congress *changed* that requirement to
a three-member quorum for the Board.  As we noted
above, if Congress had wanted to allow the Board to con-
tinue to operate with only two members, it could have kept
the Board quorum requirement at two.[6]

---

[5]In any event, if the analogy to the appellate courts were correct,
then one might have to examine each Board decision individually.
Petitioner's case was not initially assigned to a three-member panel
and thereafter decided by two members after one member had retired.
Instead, by the time petitioner's case came before the Board, Member
Kirsanow had long departed.  In practical terms, petitioner's case was
both assigned to and decided by a two-member delegee group.

[6]We have no doubt that Congress intended "to preserve the ability of
two members of the Board to exercise the Board's full powers, in limited
circumstances," *post*, at 12, as when a two-member quorum of a prop-

Furthermore, if Congress had intended to allow for a
two-member Board, it is hard to imagine why it would
have limited the Board's power to delegate its authority by
requiring a delegee group of at least three members. Nor
do we have any reason to surmise that Congress' overrid-
ing objective in amending §3(b) was to keep the Board
operating at all costs; the inclusion of the three-member
quorum and delegation provisions indicate otherwise. Cf.
Robert's Rules of Order §3, p. 20 (10th ed. 2001) ("The
requirement of a quorum is a protection against totally
unrepresentative action in the name of the body by an
unduly small number of persons").

## IV

In sum, we find that the Board quorum requirement and
the three-member delegation clause should not be read as
easily surmounted technical obstacles of little to no im-
port. Our reading of the statute gives effect to those pro-
visions without rendering any other provision of the stat-
ute superfluous: The delegation clause still operates to
allow the Board to act in panels of three, and the group
quorum provision still operates to allow any panel to issue
a decision by only two members if one member is disquali-
fied. Our construction is also consistent with the Board's
longstanding practice with respect to delegee groups. We
thus hold that the delegation clause requires that a
delegee group maintain a membership of three in order to
exercise the delegated authority of the Board.

We are not insensitive to the Board's understandable
desire to keep its doors open despite vacancies.[7] Nor are

———————

erly constituted delegee group issues a decision for the Board in a
particular case. But we doubt "Congress intended to preserve" the pre-
Taft-Hartley practice of two members acting for the Board when the
third seat was vacant, *post*, at 11, because it declined to preserve the
pre-Taft-Hartley two-member Board quorum.

[7] Former Board members have identified turnover and vacancies as a

we unaware of the costs that delay imposes on the litigants.  If Congress wishes to allow the Board to decide cases with only two members, it can easily do so.  But until it does, Congress' decision to require that the Board's full power be delegated to no fewer than three members, and to provide for a Board quorum of three, must be given practical effect rather than swept aside in the face of admittedly difficult circumstances.  Section 3(b), as it currently exists, does not authorize the Board to create a tail that would not only wag the dog, but would continue to wag after the dog died.

The judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

———————

significant impediment to the operations of the Board.  See Truesdale, Battling Case Backlogs at the NLRB, 16 Lab. Law. 1, 5 (2000) ("[I]t is clear that turnover and vacancies have a major impact on Board productivity"); Higgins, Labor Czars—Commissars—Keeping Women in the Kitchen—the Purpose and Effects of the Administrative Changes Made by Taft-Hartley, 47 Cath. U. L. Rev. 941, 953 (1998) ("Taft-Hartley's Achilles heel is the appointment process. . . .  In the past twenty years . . . Board member turnover and delays in appointments and in the confirmation process have kept the Board from reaching its true potential").

# SUPREME COURT OF THE UNITED STATES

————

No. 08–1457

————

## NEW PROCESS STEEL, L. P., PETITIONER *v.* NATIONAL LABOR RELATIONS BOARD

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

[June 17, 2010]

JUSTICE KENNEDY, with whom JUSTICE GINSBURG, JUSTICE BREYER, and JUSTICE SOTOMAYOR join, dissenting.

As of the day this case was argued before the Court, the National Labor Relations Board (Board), constituted as a five-member board, had operated with but two members for more than 26 months. That state of affairs, to say the least, was not ideal. This may be an underlying reason for the Court's conclusion. Despite the fact that the statute's plain terms permit a two-member quorum of a properly designated three-member group to issue orders, the Court holds that the two-member quorum lost all authority to act once the third member left the Board. Under the Court's holding, the Board was unauthorized to resolve the more than 500 cases it addressed during those 26 months in the course of carrying out its responsibility "to remove obstructions to the free flow of commerce" through "the promotion of industrial peace." *NLRB* v. *Fansteel Metallurgical Corp.*, 306 U. S. 240, 257 (1939). This result is removed even farther from the ideal and from congressional intent, as revealed in the statutory design. So it is hard to make the case that the Court's interpretation of the statute either furthers its most evident purposes or leads to the more sensible outcome.

Indeed, in my view, the objectives of the statute, which

must be to ensure orderly operations when the Board is not at full strength as well as efficient operations when it is, are better respected by a statutory interpretation that dictates a result opposite to the one reached by the Court. And in all events, the outcome of the case is but a check on the accuracy of the textual analysis; and here the text of the statute, which must control, does not support the holding of the Court. These reasons, and those to be further discussed, inform this respectful dissent.

I

The Board, by statute, consists of five members. 29 U. S. C. §153(a). Section 153(b) provides a mechanism in which the Board can delegate all of its powers to a three-member group. As relevant here, the statute consists of three parts. First, a delegation clause:

> "The Board is authorized to delegate to any group of three or more members any or all of the powers which it may itself exercise."

Then, a vacancy clause:

> "A vacancy in the Board shall not impair the right of the remaining members to exercise all of the powers of the Board . . . ."

And finally, immediately following the vacancy clause, are the Board and group quorum provisions:

> "[A]nd three members of the Board shall, at all times, constitute a quorum of the Board, except that two members shall constitute a quorum of any group designated pursuant to the first sentence hereof."

As the Court acknowledges, *ante,* at 4, the three-member group of Members Liebman, Schaumber, and Kirsanow were a "group designated pursuant to the first sentence" of §153(b). As such, a two-member quorum of that group had statutory authorization to issue orders;

and that is precisely what Members Liebman and Schaumber did. Because the group was properly designated under §153(b) and a two-member quorum of the group was authorized to act under the statute's plain terms, its actions were lawful. See *Connecticut Nat. Bank* v. *Germain*, 503 U. S. 249, 253–254 (1992) ("[I]n interpreting a statute a court should always turn first to one, cardinal canon before all others. . . . [C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says").

Nothing in the statute suggests that a delegation to a three-member group expires when one member's seat becomes vacant, as the Court holds today. In other contexts, it is settled law that a vacancy in a delegee group does not void the initial delegation. See *Nguyen* v. *United States*, 539 U. S. 69, 82 (2003) (concerning vacancies in three-member panels of the courts of appeals). Any doubt on that point should be resolved by this specific statutory instruction: "A vacancy in the Board shall not impair the right of the remaining members to exercise all of the powers of the Board." Members Liebman and Schaumber were exercising the powers of the Board as its remaining members; yet the Court today holds that the vacancy impaired their right to exercise those powers in hundreds of cases. That conclusion is contrary to the statutory mandate.

By its holding, the Court rejects a straightforward reading that it acknowledges is "textually permissible." *Ante,* at 6. It does so because, in its view, it is "structurally implausible." *Ante,* at 6−7. But the only textually permissible reading of §153(b) authorizes a two-member quorum of a delegee group to issue orders, as was done here; and in any event there is no structural implausibility in reading the statute according to its plain terms.

## II

The Court reads the statute to require a delegee group to maintain three members. Unable to find this requirement in the statute's text, the Court gives three reasons for its interpretation. Those reasons do not withstand scrutiny.

## A

The first reason the Court gives for its interpretation is that reading the statute to require a delegee group to maintain three members "is the only way to harmonize and give meaningful effect to all of the provisions in" §153(b). *Ante*, at 5. This is not so. But it should be further noted that the argument advanced by the Court is not that the Government's interpretation of the statute renders any provision superfluous or without a role to play in the statutory scheme. Instead, the Court surmises that certain provisions would not have "meaningful," "material," or "practical" effect, *ante*, at 5, 6, 14. But that is just to say that the Court has determined, in its own judgment, that some provisions should have a greater role than provided by the text of the statute.

The Government's reading of the statute does not render any clause meaningless. The full Board must have three or more members in order to conduct any business, including delegating its authority to a three-member group, as required under the Board quorum provision. This provision applies "at all times" to the Board acting as a whole. Two members of the Board could not conduct any business unless they were previously designated by the full Board as members of a delegee group with such authority. Any delegation of the Board's authority must be to at least three members, as required by the delegation clause. Any group to which the Board has properly delegated its authority must have two members present to act, as required by the group quorum provision. This reading gives the

delegation clause and each of the quorum provisions independent meaning.

Where two members act as a quorum of a group, the statute (unlike the Court) is indifferent to the reason for the third member's absence, be it illness, recusal, or vacancy. The Court would hold that two members of a group can act as a quorum so long as the third's absence is not due to a vacancy; yet the vacancy clause makes it clear that the authority of Board "members" to act shall not be impaired by vacancies. The clause includes all members, including those acting as part of three-member groups.

The Court in effect would rewrite the group quorum provision to say, "two members shall constitute a quorum of any group [unless the third member's absence is due to a vacancy]." Even if the statute said nothing about vacancies, this would be a misreading of the quorum provision. A "quorum" is the "minimum number of members . . . who must be present for a deliberative assembly to legally transact business." See Black's Law Dictionary 1370 (9th ed. 2009) (hereinafter Black's). As the Court has made clear in the past, quorum requirements are generally indifferent to the reasons underlying any particular member's absence. See *Nguyen*, 539 U. S., at 82.

For instance, the Court has previously discussed a statute governing the delegation of power to three-member panels of the federal courts of appeals. *Ibid.* That statute provides: "A majority of the number of judges authorized to constitute a court or panel thereof . . . shall constitute a quorum." 28 U. S. C. §46(d). While the statute makes no mention of vacancies, the Court had little trouble concluding that the statute "permits a quorum to proceed to judgment when one member of the panel dies or is disqualified." *Nguyen, supra,* at 82. The Court today offers to distinguish *Nguyen* as being "informed by the long-standing practice of allowing two judges from the initial panel to proceed to judgment in the case of a vacancy."

*Ante,* at 12. But there was little if any reliance on any such practice in *Nguyen.* In noting that its conclusion was a matter of "settled law," the Court relied on the text of the statute and a single case that itself looked directly to the statutory text of §46(d). *Nguyen, supra,* at 82 (citing *United States* v. *Allied Stevedoring Corp.,* 241 F. 2d 925, 927 (CA2 1957) (L. Hand, J.)).

If the group quorum provision leaves any room for doubt that it applies in cases of vacancy, its application is made clearer by the vacancy clause itself. That clause states in unequivocal terms that "[a] vacancy in the Board shall not impair the right of the remaining members to exercise all of the powers of the Board." §153(b). The Court makes much of the fact that the statute refers to a vacancy in the "Board" rather than in a "group." But the former category subsumes the latter. That is, the phrase "[a] vacancy in the Board" covers the entire universe of instances in which there may be a vacancy in a group, because all group members are Board members.

The Court counters that the vacancy clause "speaks to the effect of a vacancy in the *Board* on the authority to exercise the powers of the *Board*," *ante,* at 11, as opposed to a vacancy in a group. But the Court's abridged re-statement of the vacancy clause suffers from a critical imprecision. The Court's point would be well taken if the vacancy clause stated that "a vacancy in the Board shall not affect the power of the Board to operate." But the clause instead states that "[a] vacancy in the Board shall not impair the right of the remaining members to exercise all of the powers of the Board." Delegee groups consist of members exercising the powers of the Board. This clause thus instructs that a vacancy in the Board shall not im-pair the right of members to exercise the Board's powers, an authority that members of delegee groups possess. But under the Court's reading, vacancies in the Board will often impair the right of the remaining members to exer-

cise the powers of the Board, notwithstanding the explicit statutory command to the contrary.

In an effort to avoid the mandates of the group quorum provision, as buttressed by the vacancy clause, the Court relies on the delegation clause. The Court reads the clause as requiring a delegee group to maintain three members in order for its authority to remain intact. In my respectful submission, this reading of the statute, in which any vacancy in a delegee group somehow invalidates the delegation itself, has no textual basis. Contrary to the Court's and petitioner's assertions, the delegation clause is not rendered unimportant under the Government's interpretation. The delegation clause establishes what is required for delegation in the first instance, while the vacancy clause and the group quorum provision allow the delegee group to proceed in the event that a member's term expires or a member resigns.

Congress could have required a delegee group to maintain three members, but it did not do so; instead, it included a vacancy clause that is an explicit rejection of such a requirement. That is no doubt why the Court's reading has not been adopted by the five Courts of Appeals to have rejected its result. See *Teamsters Local Union No. 523* v. *NLRB*, 590 F. 3d 849 (CA10 2009); *Narricot Indus., L. P.* v. *NLRB*, 587 F. 3d 654 (CA4 2009); *Snell Island SNF LLC* v. *NLRB*, 568 F. 3d 410 (CA2 2009); 564 F. 3d 840 (CA7 2009); *Northeastern Land Servs., Ltd.* v. *NLRB*, 560 F. 3d 36 (CA1 2009). While one court of appeals reached the same result as the Court, it too did not adopt the Court's reasoning that a delegee group must maintain three members. *Laurel Baye Healthcare of Lake Lanier, Inc.* v. *NLRB*, 564 F. 3d 469, 472−473 (CADC 2009) ("[T]his delegee group may act with two members so long as the Board quorum requirement is, 'at all times,' satisfied").

The Court's reasons for nonetheless reading this re-

quirement into the statutory text bring me to its second point.

B

The Court's textual arguments in the end reduce to a single objection: The Government's reading of §153(b) allows two Board members to act as the full Board, thereby eviscerating the requirement that the Board only operate with a three-member quorum (or as three-member panels). This animates the Court's second reason for departing from the statutory text, as the Court suggests that had Congress "intended to authorize two members alone to act for the Board on an ongoing basis, it could have said so in straightforward language." *Ante,* at 7. But Congress undoubtedly permitted two members to act for the Board: Even under the Court's interpretation, two members are authorized to exercise the full powers of the Board so long as they are part of a delegee group that has fallen to two members due to any reason other than vacancy. *Ante*, at 13 ("[T]he group quorum provision still operates to allow any panel to issue a decision by only two members if one member is disqualified").

The Court's complaint, then, cannot be that Congress did not intend two members to exercise the powers of the Board; it must be that Congress did not intend to allow two members to do so for protracted periods of time. The Court is likely correct that Congress did not expect a two-member quorum to operate as the Board for extended periods, but unintended consequences are typically the result of unforeseen circumstances. And it should be even more evident that Congress did not intend the Board to cease operating entirely for an extended period of time, as the Court's interpretation of §153(b) now ordains. Members Liebman and Schaumber issued more than 500 opinions when they operated as a two-member quorum of a properly designated group:

"Those decisions resolved a wide variety of disputes over union representation and allegations of unfair labor practices, including cases involving employers' discharges of employees for exercising their statutory rights; disputes over secret ballot elections in which employees voted to select a union representative; protests over employers' withdrawal of recognition from union representatives designated by employees; refusals by employers or unions to honor their obligation to bargain in good faith; and challenges to the requirement that employees pay union dues as a condition of employment." Brief for Respondent 6–7 (footnotes omitted).

The Court's objection, that Congress could have been more explicit if it wanted two members to operate as the Board, is misplaced. There is nothing inconsistent about Congress preferring Board decisions to be made by three members and advancing that preference through statutory requirements, while at the same time providing exceptions for suboptimal circumstances, such as those presented here. Quorum provisions do not express the legislature's judgment about the optimal number of members that should be present to transact business; they set a floor that, while less than ideal, provides a minimum number of participants necessary to protect "against totally unrepresentative action." Robert's Rules of Order §3, p. 16 (rev. ed. 1970).

One likely reason Congress did not permit the Board to delegate its authority to two-member groups in the first instance is that Congress wanted to avoid two-member groups in the mine run of cases. Congress' statutory scheme achieved that goal, as the Court's review of the Board's historical practices aptly demonstrates. *Ante,* at 7–8. Congress nonetheless provided for two-member quorums to operate in extraordinary circumstances, where

the Board has exercised its discretion to delegate its authority to a particular three-member group, and one member of such a group is unavailable for whatever reason. The Board's delegation to a three-member group that ultimately dwindled to two was a thoughtful and considerate exercise of its reasonable discretion when it was confronted with two imperfect alternatives.

During the past two years, events have turned what Congress had undoubtedly thought would be an extraordinary circumstance into an ordinary one, through no fault of the Board. That is no reason to dispense with the statutory regime that is prescribed when these circumstances arise, even when they unexpectedly persist.

C

The Court's final reason for its interpretation is the Board's longstanding practice of reconstituting panels whenever they drop below three members due to a vacancy. But see *Photo-Sonics, Inc.* v. *NLRB*, 678 F. 2d 121, 122−123 (CA9 1982) (upholding decision from a two-member delegee group after third member retired). The commonsense conclusion from this practice, however, is that the Board respects the superiority of three-member groups to two-member quorums of those groups. That the Board reconstitutes its panels to include three members does not demonstrate that a two-member group lacks the authority to act when recomposition is not an option.

The Court is mistaken, then, when it suggests that, if two-member quorums were permissible, the Board would have a practice of allowing two-member quorums to persist without reconstituting panels. Persuasive authority shows the contrary to be true. In 2003, the Office of Legal Counsel advised that two members can operate as a quorum of a properly designated group, even if the other seats on the Board are vacant. The Board agreed to be bound by that opinion. See Dept. of Justice, Office of Legal Counsel,

Quorum Requirements, App. to Brief for Respondent 1a–3a. Six months later, Board Member Acosta resigned. See NLRB Bulletin, Ronald Meisburg Receives Recess Appointment From President Bush to be NLRB Member (Dec. 29, 2003). Despite OLC's opinion and the Board's position that two-member quorums could exercise the full powers of the Board, the Board prudently reconstituted each three-member panel on which Member Acosta served before his departure because there were enough members of the Board to do so. Its own prudent actions should not be used as a reason to strip the Board of a statutory power.

And a further instructive history comes from the practices of the original Board, before the 1947 Taft-Hartley Act. The Wagner Act of 1935, 49 Stat. 451, provided for a three-member Board and contained a vacancy provision similar to the one found in §153(b): "A vacancy in the Board shall not impair the right of the remaining members to exercise all the powers of the Board, and two members of the Board shall, at all times, constitute a quorum." §3(b), 49 Stat. 451. Under this statutory grant of authority, from 1935 to 1947 a two-member quorum of the Board operated during three separate periods when the third seat was vacant, issuing nearly 500 two-member decisions during such times. Those two-member Boards issued 3 published decisions in 1936 (reported at 2 N. L. R. B. 198–240); 237 published decisions in 1940 (reported at 27 N. L. R. B. 1–1395 and 28 N. L. R. B. 1–115); and 225 published decisions in 1941 (reported at 35 N. L. R. B. 24–1360 and 36 N. L. R. B. 1–45); see also Brief for Respondent 3, n. 1.

Congress intended to preserve this practice when it enacted the Taft-Hartley Act in 1947. The purpose of the Taft-Hartley amendment was to increase the Board's efficiency by permitting multiple three-member groups to exercise the full powers of the Board. See S. Rep. No. 105,

80th Cong., 1st Sess., 8 (1947) ("The expansion of the Board . . . would permit it to operate in panels of three, thereby increasing by 100 percent its ability to dispose of cases expeditiously"). In furtherance of that objective, the new statutory language in §153(b) complements the congressional intent to preserve the ability of two members of the Board to exercise the Board's full powers, in limited circumstances, by permitting the Board to delegate "any or all" of its powers "to any group of three or more members," two members of which would constitute a quorum.

D

The petitioner, but not the Court, advances an alternative interpretation of §153(b) adopted by the United States Court of Appeals for the District of Columbia Circuit. See Brief for Petitioner 16−27; *Laurel Baye*, 564 F. 3d 469. In the petitioner's view, §153(b) requires the Board to have a quorum of three members "at all times," and when the Board's quorum fell to two members any powers that it had delegated automatically ceased.

This is a misreading of the statute that the Court rightly declines to adopt. *Ante,* at 9−10, n. 4. As explained above, that the Board must meet a three-member quorum requirement at all times when it wishes to operate as the full Board does not mean it must maintain three members in order for delegee groups to act. It just means that the quorum requirement for the full Board, operating independently of any delegee group, is fixed at three, as opposed to the various dynamic quorum requirements found elsewhere in the United States Code. See, *e.g.,* 28 U. S. C. §46(d) (setting the quorum requirements for courts of appeals at "[a] majority of the number of judges authorized to constitute a court or panel thereof"); see also Black's 1370 (defining "proportional quorum" as: "A quorum calculated with reference to some defined or assumed set, usu. either the number of seats (including vacancies)

or the number of sitting members (excluding vacancies)”).

Petitioner’s reading ignores the operation of the word “except” in the statute: “[T]hree members of the Board shall, at all times, constitute a quorum of the Board, except that two members shall constitute a quorum of any group.” §153(b).

While the Court does not adopt petitioner’s flawed reading, it should be noted that its failure to decisively reject it calls into question various delegations of authority the Board has made beyond three-member groups. For instance, §153(d) permits the Board to delegate various powers to its general counsel, but under petitioner’s view the general counsel would have lost all authority the moment the Board fell to two members. See also §153(b) (permitting Board to delegate certain powers to its regional directors). The Court’s assurances that its opinion “does not cast doubt on the prior delegations of authority to non-group members,” *ante,* at 10, n. 4, are cold comfort when it fails to reject petitioner’s view outright.

\* \* \*

It is not optimal for a two-member quorum to exercise the full powers of the Board for an extended period of time. But the desire to avoid that situation cannot justify the Court’s significant revisions to §153(b): (1) It writes language into the delegation clause, requiring delegee groups to maintain a membership of three, despite the conspicuous absence of this requirement and the statutory rejection of it in the group quorum provision; (2) it excises the word “not” from the vacancy clause, so that a Board vacancy does “impair the right of the remaining members to exercise all of the powers of the Board” in hundreds of cases; (3) it renders the group quorum provision unintelligible, so that its application depends entirely on the reason for the third member’s absence, and applies in all instances except when the absence is due to a vacancy

(despite the vacancy clause's contrary mandate, earlier in the very same sentence).

The Court's revisions leave the Board defunct for extended periods of time, a result that Congress surely did not intend. The Court's assurance that its interpretation is designed to give practical effect to the statute should bring it to the opposite result from the one it reaches. For these reasons, I would affirm the judgment of the Court of Appeals.