IKUTA, Circuit Judge,
dissenting:
Who was exercising the executive power of the United States needed to bring this civil enforcement action? Not Richard Cordray — he was not properly appointed by the President and so was not an Officer of the United States at the time the action was filed. Not the Consumer Financial Protection Bureau — without an Officer of the United States, it was a. mere Congressional creation that could not exercise executive power. In- fact, no one had the executive power, necessary' to prosecute this civil enforcement action ip the district court. And without .the Executive’s -power to “take Care that the. Laws be faithfully executed,” U.S. Const, art. II, § 3, no one could claim, the Executive’s .unique Article III standing. Because the plaintiff here lacked executive power and therefore lacked Article III standing, the district court was bound to dismiss the action.
Today the majority flouts this most basic constitutional limit to our authority by failing to give a single reason why the Bureau had standing here. The majority’s view of jurisdiction reduces to zero the “irreducible constitutional minimum ' of standing,” Lujan v. Defs. of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130 (1992), arid vitiates, the standing requirement’s vital role in preventing “the judicial process from being used to usurp thé powers of the political branches,” Hollingsworth v. Perry, 133 S.Ct. 2652, 2661 (2013) (quoting Clapper v. Amnesty Int'l USA, — U.S. *1199 —, 133 S.Ct. 1138, 1146, 185 L.Ed.2d 264 (2013)). I decline to participate in this power grab, and therefore I dissent.
I
The plaintiff here is the Consumer Financial Protection Bureau, which was created by the Consumer Financial Protection Act in 2010. The Act specified that the Bureau is an executive agency, 12 U.S.C. § 5491(a), and would have a director who would be “appointed by the President, by and with the advice .and consent of the Senate,” id. § 5491(b)(1)-®).' This statutory language tracks the language of the Appointments Clause, ensuring that the Director of the Bureau is also an Officer of the United States. U.S. Const, art. II, § 2.[1] The Act gave the Bureau broad powers, including the authority to commence civil litigation against any person who violates a Federal consumer financial law. 12 U.S.C. § 5564(a)-(b).
After the Act became law, President Obama appointed Richard Cordray as the Director of the Bureau under the Recess Appointments Clause, U.S. Const, art. II, § 2, cl. 3, while the Senate was in a brief recess between two pro forma sessions. In NLRB v. Noel Canning, the Supreme Court held that President Obama’s appointments to the NLRB were invalid exercises of the Recess Appointment power, 134 S.Ct. 2550, 2557 (2014). Because these appointments were made on the same day and through the same method as President Obama’s appointment of Cordray to the CFPB, there is no dispute that Cordray was not properly appointed under the Constitution or the Act and was therefore not an Officer of the United States with executive authority. 12 U.S.C, § 5491(b)(2)-(3); NLRB v. Noel Canning, 134 S.Ct. 2550 (2014). The Bureau does not claim that some other person in the Bureau had the requisite executive authority of an Officer of the United States. Of course, Cordray could not give his subordinates executive authority that he did not possess. See, e.g., Olympic Fed. Sav. & Loan Ass’n v. Dir., Office of Thrift Supervision, 732 F.Supp. 1183, 1200 (D.D.C.1990) (“[E]ach of the Directors could not delegate more authority, than he himself had.”). As explained below, this means that on July 18, 2012, when a civil enforcement action was' filed against Chance Gordon and The Gordon Law Firm, P.C., neither the Bureau nor anyone in it had executive authority, and therefore the Bureau lacked standing to bring this action.
A
In order to establish standing, a plaintiff must prove “a concrete and particularized injury that is fairly traceable to the challenged conduct, and is likely to be redressed by a favorable judicial decision.” Hollingsworth, 133 S.Ct. at 2661 (citing Lujan, 504 U.S. at 560-61, 112 S.Ct. 2130). An “injury to the interest in seeing that the law is obeyed” does not suffice .to satisfy the standing inquiry, at least when the person suing is a private citizen. See FEC v. Akins, 524 U.S. 11, 24, 118 S.Ct. 1777, 141 L.Ed.2d 10 (1998).
Enforcement actions brought by the Executive satisfy the requirements of Article *1200 III for purposes of a federal court’s subject matter jurisdiction. The Constitution imposes on the President the duty to “take Care that the Laws be faithfully executed,” U.S. Const, art. II, § 3, and an important component of that duty is obtaining criminal convictions for violations of law in federal court, see United States v. Valenzuela-Bernal, 458 U.S. 858, 863, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982), as well as enforcing and defending federal law in civil suits, see, e.g., Buckley v. Valeo, 424 U.S. 1, 138, 96 S.Ct. 612 (1976) (“A lawsuit is the ultimate remedy for a breach of the law, and it is to the President, and not to the Congress, that the Constitution entrusts the responsibility to ‘take Care that the Laws be faithfully executed.’ ” (quoting U.S. Const, art. II, § 3)). The Executive has a unique need to access the federal courts in order to fulfill this constitutional responsibility for ensuring that public rights are enforced, and such an executive enforcement action is a “Case” or “Controversy” that satisfies Article III. See Steel Co. v. Citizens for a Better Env’t, 523 U.S. 83, 102 n. 4, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (confirming that the Court’s standing jurisprudence “derives from Article III and not Article II,” even when it has “an impact on Presidential powers”). Therefore, federal courts have jurisdiction over such executive actions under Article III. See In re Debs, 158 U.S. 564, 586, 15 S.Ct. 900, 39 L.Ed. 1092 (1895) (holding that when the government acts to enforce public rights, “the mere fact that the government has no pecuniary interest in the controversy is not sufficient to exclude it from the courts”).
There is only one way for a plaintiff to obtain the Executive’s Article III standing to enforce public rights in federal court: the plaintiff must be vested with executive authority. The Constitution vests the executive power “in a President of the United States of America.” U.S. Const, art. II, § 1. The President ipay authorize others to exercise executive authority pursuant to the Appointments Clause of the Constitution, U.S. Const, art. II, § 2, which requires the President to appoint principal officers with the “Advice and Consent” of the U.S. Senate.[2] See Buckley, 424 U.S. at 125-27, 96 S.Ct. 612. Because the Appointments Clause provides “the only authorization for appointment of those to whom substantial executive or administrative authority is given by statute,” id. at 124-25, 96 S.Ct. 612, any person exercising significant executive authority must “be appointed in the manner prescribed” by that clause, id. at 126, 96 S.Ct. 612. A person properly appointed would thus have standing to file suit in vindication of public rights. Id. at 126, 140, 96 S.Ct. 612.
We know that Cordray was not properly appointed by the President and therefore did not have any authority to enforce public rights. As a result, Cordray lacked the Executive’s unique Article III standing.
And without Cordray, or any properly appointed Officer of the United States, the Bureau lacked any executive authority that would allow it to enforce public rights. Contrary to the majority, Maj. op. at 1188— 89, Congress cannot by itself , confer executive authority to bring a civil enforcement. action on an entity created by statute. See Buckley, 424 U.S. at 137-38, 96 S.Ct. 612. In Buckley, the Court considered a provision in the 1974 Amendments to the Federal Election Campaign Act (FECA) that empowered the Federal Election Commission (FEC) to file civil enforcement suits. Id. at 6, 111, 96 S.Ct. 612. Because FECA *1201 gave Congress the right to appoint a majority of the FEC’s members, id. at 126-27, 96 S.Ct. 612, Buckley held that the FEC could not exercise the FECA’s grant of enforcement power or conduct civil litigation. Id. at 137-40, 96 S.Ct. 612. Only the President and persons who aré “Officers of the United States” could do so. Id. at 139-40, 96 S.Ct. 612. Buckley therefore struck down the provisions in FECA “vesting in the [FEC] primary responsibility for conducting civil litigation in the courts of the United States for vindicating public rights.” Id. at 140, 96 S.Ct. 612. In light of Buckley’s reasoning, the Act’s statement that the Bureau is an Executive Branch agency is not enough to give the Bureau the Executive’s enforcement authority. Cf. Maj. op. at 1188-89. As a result, the Bureau did not have the Executive’s unique Article III standing.[3]
If neither Cordray nor the Bureau had standing, then no one before the district court in this case had Article III standing to bring this action against Gordon and his law firm.[4] Since Article III standing is assessed at the time an action is filed and must be met throughout all stages of litigation in the federal courts, Hollingsworth, 133 S.Ct. at 2661, the district court had a duty to determine whether the Bureau had standing before .ruling on the enforcement action. WildEarth Guardians v. EPA, 759 F.3d 1064, 1070 (9th Cir.2014) (quoting Summers v. Earth Island Inst., 555 U.S. 488, 499, 129 S.Ct. 1142 (2009)). Because the requirements of Article III were not satisfied when the Bureau filed this action, the district court was obliged to dismiss it for want of subject mattér jurisdiction. We are now required to do the same. Hollingsworth, 133 S.Ct. at 2659.
B
The majority fails to even address how a Bureau with no executive power has standing to bring a civil enforcement action. Instead of providing reasoning, the majority merely makes the conclusory statement that the Bureau is “part of the Executive Branch,” Maj. op. at 1189, which does not explain the source of the Bureau’s executive power. The majority then points to two cases rejecting Appointments Clause claims as “nonjurisdictional.” Maj. op. at 1189. But these cases give the majority no support because neither addressed the issue of standing. The first case, Freytag v. Commissioner, addresses only the question whether a court should entertain an argument that had not been raised below. Freytag ruled that a statute authorizing the Chief Judge of the Tax Court to assign any proceeding to a special trial judge did not violate the Appointments Clause. 501 U.S. 868, 111 S.Ct. 2631 (1991). As a preliminary housekeeping matter, the Court held that it could consider the appellants’ Appointments Clause objection to the judicial officer for the first time on appeal because such objection was “in the category of nonjurisdictional structural constitutional objections that could be considered on appeal whether or not they *1202 were ruled upon below.” Id. at 878-79, 111 S.Ct. 2631. Because there was no dispute that the petitioners (who had been ordered to pay taxes owed to the federal government) had suffered a concrete and particularized injury, this case did not raise any question regarding standing and therefore provides no support to the majority’s theory that the court has jurisdiction to hear a claim brought by a plaintiff who lacks the Executive’s unique Article III standing to bring an enforcement action.
Nor did the majority’s second authority, Buckley, hold that a court has jurisdiction over a civil enforcement action brought by someone who lacks standing. See Maj. op. at 1Í89-90. Of course, Buckley did not address the FEC’s standing at all, and thus has no precedential effect on this issue. See Steel Co., 523 U.S. at 91, 118 S.Ct. 1003. Moreover, contrary to the majority, Buckley did not hold that the FEC could bring civil enforcement actions at a time when it lacked the Executive’s enforcement authority. Maj. op. at Í190. Rather, the Court' accorded de facto validity only to the FEC’s past administrative actions and legislative determinations that were analogous to the powers that Congress could delegate to one of its own committees. Buckley, 424 U.S. at 142, 96 S.Ct. 612. Specifically, the Court held that the FEC’s inability to exercise enforcement powers “because of the method by which its members have been selected” did not “affect the validity of the Commission’s administrative actions and determinations to this date, including its administration of those provisions, upheld today, authorizing the public financing of federal elections” and so those “past acts of the Commission are therefore accorded de fac-to■ validity, just as we have recognized should be the case with respect to legislative acts performed by legislators held to have been elected in accordance with an unconstitutional apportionment plan.” Id. (emphasis added); see also id. at 137, 96 S.Ct. 612.
Indeed, at the time' the Court ruled, it appears that the FEC had not yet even exercised its enforcement authority. As Buckley explained, the D.C. Circuit had ruled that it could not address the constitutionality of the FEC’s- enforcement authority because it was not yet ripe for resolution. Id. at 115 n. 157, 96 S.Ct. 612; see also Buckley v. Valeo, 519 F.2d 821, 893 (D.C.Cir.1975) (“No party has been joined in a civil enforcement action initialed by the Commission,”). , The Court disagreed with the D.C. Circuit on the ripeness issue, but only because by that time, the FEC “ha[d] undertakeh to issue rules and regulations,” and “[w]hile many of its other functions remain[ed] as yet unexercised, the date of their all but certain exercise [was] now closer by several months than it was at the time the Court of Appeals ruled.” 424 U.S. at 116-17, 96 S.Ct. 612. Based on these and other statements-in Buckley, it is clear that’the FEC had not undertaken any enforcement action at the' time the Court ruled (or at least, the Court did not know of any), and therefore we cannot infer that the Court accorded de facto validity to such actions.[5]
Because Freytag and Buckley are inap-posite and did not address the standing issue before us here, the majority has no support for its conclusion that the Bureau has standing to bring a civil enforcement *1203 action to enforce the Act. Instead of explaining why the Bureau has standing under Article III, the majority instead claims that the Bureau’s standing to bring a civil enforcement action is not affected by the President’s failure to appoint Cordray under Article. II and .accuses the dissent of conflating Article II and Article III. Maj. op.-at 1189. But this is backwards. The improper appointment of Cordray merely deprived the Bureau of one basis for standing. In most cases, an executive agency has Article III standing because it has a director properly vested with executive authority under Article II, but it is undisputed that the Bureau cannot claim standing on this basis. So' the real question is: what is the alternative basis for the Bureau’s standing? Instead of providing one, the majority merely reiterates that Congress enacted a statute stating that the Bureau is part of the Executive Branch. Maj. op. at 1189. But Congress cannot confer executive authority to bring a civil enforcement action on an entity created by statute, see Buckley, 424 U.S. at 137-38, 96 S.Ct. 612, so this rationale fails. In sum, the majority offers no explanation for the Bureau’s standing because it has none.
II
Because Article III standing must exist at the time a complaint is filed, Richard Cordray’s August 30, 2013, ratification could not retroactively cure, the district court’s lack of jurisdiction.
Federal courts have consistently rejected arguments that a later act can cure a lack of standing at the time suit was filed. Thus, where a plaintiff files a complaint before its asserted injury occurred, it lacks standing even if a sufficient injury-in-fact occurs while the case is pending. See Police & Fire Ret. Sys. of Detroit v. IndyMac MBS, Inc., 721 F.3d 95, 110 (2d Cir.2013) (“[W]e hold that the Rule 15(c) ‘relation back’ doctrine-does not permit members of a putative class, who are not named parties, to intervene in the class action as named parties in order to revive. claims that were dismissed from the class complaint for want of jurisdiction.”); Utah Ass’n of Cts. v. Bush, 455 F.3d 1094, 1101 & n. 6 (10th Cir.2006) (hqlding that “[b]e-cause standing is determined : as of the time of the filing of the complaint,” the plaintiffs alleged subsequent injury could not serve as a basis for standing). Similarly, the intervention of a party with standing after an action has been filed “cannot cure any jurisdictional defect that would have barred the federal court from hearing the original action.” 7 Charles Alan Wright, Arthur R. Miller, et al., Federal Practice and Procedure § 1917 (3d ed.2005); see also Disability Advocates, Inc. v. N.Y. Coalition for Quality Assisted Living, Inc., 675 F.3d 149, 160-62 (2d Cir.2012) (“[I]f jurisdiction is lacking at the commencement of a suit, it cannot be aided by the intervention of a plaintiff with a sufficient claim.” (alterations omitted)).
At the time thq Bureau filed this enforcement action, it had no standing because it had no executive authority to vindicate the .public interest in federal court. While the President subsequently properly appointed an Officer of the United States to the position of Director, who could then constitutionally bring, an .enforcement action, that official could not retroactively cure the Bureau’s lack of standing. Cf. FEC v. NRA Political Victory Fund, 513 U.S. 88, 90, 98-99, 115 S.Ct. 537 (1994) (holding that the Solicitor General’s ratification, of an unauthorized petition for cer-tiorari could not cure a failure to meet the “mandatory and jurisdictional” 90-day deadline to file a petition).
Ill
Because the Bureau lacked standing when it brought this enforcement action, we lack jurisdiction. This conclusion un *1204 doubtedly applies to numerous other en- - forcement actions taken by the Bureau for the 18 months of its existence before Richard Cordray was properly confirmed by the Senate in July 2013. But while the Supreme Court understands the practical consequences of invalidating large numbers of agency actions, it has nevertheless done so when the law requires. See Noel Canning v. NLRB, 705 F.3d 490, 493 (D.C.Cir.2013), aff'd 134 S.Ct. 2550 (2014) (holding that because there was no quorum of validly appointed board members, the NLRB “lacked authority" to act,” and the enforcement order was therefore “void ab initio ”); see also New Process Steel, L.P. v. NLRB, 560 U.S. 674, 687-88, 130 S.Ct. 2635, 177 L.Ed.2d 162 (2010); id. at 689, 130 S.Ct. 2635 (Kennedy, J., dissenting) (“Under the Court’s holding, the Board was unauthorized to resolve the more than 500 cases it addressed during those 26 months in the course of carrying out its responsibility....”).
We likewise'have a duty to dismiss this case for lack of Article III jurisdiction, practical effects notwithstanding. “[N]o principle is more fundamental to the judiciary’s proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies.” DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 341, 126 S.Ct. 1854, 164 L.Ed.2d 589 (2006). The limitations imposed by Article III may not be swépt aside for “the sake of convenience and efficiency.” Raines v. Byrd, 521 U.S. 811, 820, 117 S.Ct. 2312 (1997). Because the majority ignores these fundamental limits to our Constitutional authority, I dissent.

. The Appointments Clause states:
[The President] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all other Officers of die United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

. Inferior officers may be appointed by the President alone, the heads of departments, or the judiciary, as Congress may determine, but it is undisputed that no inferior officer was involved in the civil enforcement action here.

. Nor can Congress confer the Executive's unique Article III standing to private individuals. See Lujan, 504 U.S. at 573-74, 112 S.Ct. 2130 (holding that Congress cannot confer the Executive’s standing to enforce public rights on private individuals through ''citizen-suit” provisions); see also Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens, 529 U.S. 765, 772-74, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000) (holding that private individuals can assert the federal government’s interests in a qui tam suit because they have their own pecuniary interest as partial assignees of the government's pecuniary claim).

. Neither Richard Cordray nor the Bureau allege any injury in fact that would- otherwise provide standing under Article III.

. The majority cites Legi-Tech for the proposition that the D.C. Circuit interpreted Buckley as retroactively validating civil enforcement actions brought by an improperly constituted FEC. Maj. op, at 1190. This is mistaken: Legi-Tech held that a properly constituted FEC had the authority to continue an enforcement action, and did not address any standing issue. FEC v. Legi-Tech, Inc., 75 F.3d 704 (D.C.Cir.1996).